Fed 649
Fed 296
Fed 542

# THE AMERICAN LOAN AND TRUST COMPANY

## *v.*

# MINNESOTA AND NORTHWESTERN RAILROAD COMPANY.

*Filed at Ottawa October 11, 1895.*

157 641
164 640

157 641
175 142
78a 441

157 641
85a 250

157 641
186 ²196

157 641
196 ¹207
100a ⁵467

157 641
205 578

1. APPEALS AND ERRORS—*one ground of appellate jurisdiction sufficient—franchise involved.* The question whether a freehold is involved on appeal to the Supreme Court in a suit to foreclose a railroad mortgage involving conflicting rights of different railroad companies to the mortgaged property, becomes immaterial where the primary question is whether one of such companies has a legal existence, as the question of franchise confers jurisdiction.

2. CORPORATIONS—*powers of corporations strictly construed.* Every power that is not clearly granted to a corporation is withheld, and any ambiguity in the terms of the grant must operate against the corporation and in favor of the public.

3. SAME—*effect of unauthorized attempt to consolidate.* The mere fact that corporations of different States attempt to consolidate without a law authorizing consolidation, and assume to act as a consolidated corporation, even in the full belief that they were legally incorporated, will not constitute them a corporation *de facto.*

4. SAME—*what is a de facto corporation.* To create a *de facto* corporation there must be a law under which such corporation might be lawfully created, together with user under such law.

5. SAME—*limits of rule that de facto corporation cannot be questioned collaterally.* The rule forbidding the existence of a *de facto* corporation to be questioned except by the State and in a direct proceeding, does not apply to a corporation attempted to be formed by the consolidation with corporations of other States of a corporation organized in a State whose statutes confer no such right.

6. RAILROADS—*consolidation of railroads not authorized in Illinois in 1882.* In 1882 railroad corporations organized under the laws of Illinois had no authority, unless granted by their respective special charters, to consolidate with railroad companies of other States, but the then prevailing legislative and public policy was opposed to such consolidations.

7. SAME—*acts authorizing railroads to consolidate not retrospective.* The acts of June 16, 1883, (Laws of 1883, p. 124,) and of June 30, 1885, (Laws of 1885, p. 229,) relating to the consolidation of Illinois railroad companies with those of other States, are not retrospective.

8. SAME—*contracts by pretended consolidation void.* Right of way contracts and a mortgage made by an organization assuming, without warrant of law, to act as a corporation, formed by consolidation of

railroad companies, are invalid, for the reason that there is no corporation in existence with capacity to act or be bound.

9. SAME—*contracts with illegal consolidation not contracts of separate companies.* Contracts for a right of way, purporting to be made with a consolidated company which has no legal existence, cannot be sustained as the contracts of one company of such consolidation, where there is nothing to show that they are its contracts.

10. SAME—*issuing bonds to construct railroads in other States.* A railroad company in Illinois had in 1882 no power or authority to issue bonds, or authorize any other person or corporation to issue bonds, for the purpose of constructing railroads in other States.

11. PLEADING—*demurrer does not admit conclusions of law.* A demurrer to a bill admits only the facts well pleaded, and not the conclusions of law stated by the pleader.

APPEAL from the Circuit Court of Cook county; the Hon. MURRAY F. TULEY, Judge, presiding.

CHARLES L. EASTON, and ROBERT LUDLOW FOWLER, for appellant:

The statutes of Illinois pertaining to this subject, in force at the time of the consolidation, in 1882, are set forth in Starr & Curtis' Stat. chap. 32, pars. 50, 57, 65, and chap. 114, pars. 23, 27, 43, 44. See, also, "An act to provide for the consolidation of certain railroad corporations," passed in 1883. Chap. 114, pars. 24, 25, 26.

We insist, under the authority of the above statutes a consolidation as in the case at bar could be effected. *Railroad Co.* v. *Weber,* 96 Ill. 446; *Bridge Co.* v. *Adams County,* 88 id. 619; *Railroad Co.* v. *Loan and Trust Co.* 49 id. 331; *Railroad Co.* v. *Railroad Co.* 6 Biss. 219.

Any attempt at consolidation by a corporation of Illinois is, when not questioned by the State itself, good as against third persons, especially wrongdoers. *People ex rel.* v. *Trustees,* 111 Ill. 171; *Renwick* v. *Hall,* 84 id. 162; *Mitchell* v. *Deeds,* 49 id. 416; *Goodrich* v. *Reynolds,* 31 id. 490; *Railroad Co.* v. *Cook,* 29 id. 237; *Tarbell* v. *Page,* 24 id. 46; *Rice* v. *Railroad Co.* 21 id. 93; *Trustees* v. *Thompson,* 20 id. 197; *Beekman* v. *Railroad Co.* 35 Fed. Rep. 3; *Harvey* v. *Railroad Co.* 28 id. 169; Taylor on Corporations, sec. 145.

Consolidation and incorporation stand on the same legal footing, at least for the purposes of such a suit as this, to obtain redress for a wrong to a *de facto* corporation. *Railroad Co.* v. *Sumner County*, 33 Pac. Rep. 312.

Ordinarily the original or consolidated charter of a corporation should be attacked only at the instance of a public officer, and in the name of the State. *Bell* v. *Railroad Co.* 10 Atl. Rep. 741; *Terhune* v. *Potts*, 47 N. J. L. 218; *Rice* v. *Bank*, 126 Mass. 303.

Such a consolidated corporation is, within the territory of the State of Illinois, a domestic corporation, and nothing else,—at least in so far as the State courts are concerned. *Railroad Co.* v. *Blake*, 9 Rich. 228; *Tysen* v. *Railway Co.* 15 Fed. Rep. 763.

Although the corporation may have been formed without legislative authority, the interest in land acquired falls within the Recording act. *McAuley* v. *Railroad Co.* 83 Ill. 348; *Ward* v. *Railroad Co.* 119 id. 287; *Railway Co.* v. *Railway Co.* 105 id. 110; *Railway Co.* v. *Railroad Co.* 112 id. 589; Morawetz on Corporations, secs. 29, 137; *Allen* v. *Woodruff*, 96 Ill. 11; *Carbine* v. *Pringle*, 90 id. 302.

The mortgagee comes into equity to be subrogated to the rights of the mortgagor, and also to vindicate and redress these rights in the same suit. The doctrine of subrogation is carried far beyond this in the courts of the United States. *Young* v. *Railroad Co.* 2 Woods, 606.

In *Crane* v. *Elizabeth*, 36 N. J. Eq. 339, it is said that the mortgagee must resort to equity in such cases. *Wilson* v. *Railroad Co.* 67 Me. 358; *Martin* v. *Railway Co.* 35 L. J. Ch. 795; *Hager* v. *Brainerd*, 44 Vt. 294.

Equity will give relief, and impresses a constructive trust arising *ex maleficio* in favor of one equitably entitled thereto, although he never had a legal estate. *Angle* v. *Railroad Co.* 151 U. S. 1.

GARDNER & McFADON, for appellee:

The consolidation of the foreign corporations of Wisconsin and Minnesota with the Illinois corporation, at-

tempted on March 20, 1882, was nugatory and null and void, and acts done in pursuance of such intended consolidation are protected from review, save and except by legislative authority of the State. *Transportation Co.* v. *Pullman Car Co.* 139 U. S. 34; *Navigation Co.* v. *Railroad Co.* 145 id. 52; *Pearce* v. *Railroad Co.* 22 How. 441.

Mr. JUSTICE BAKER delivered the opinion of the court:

On September 26, 1881, a corporation was formed under the laws of the State of Wisconsin, called the Chicago, Freeport and St. Paul Railroad Company, for the purpose of building a railroad from the boundary line between the States of Wisconsin and Illinois, in a northwesterly direction, to the eastern boundary line of the State of Minnesota. On December 16, 1881, the St. Paul, Minneapolis and Chicago Railroad Company was organized under the laws of the State of Minnesota, for the purpose of constructing a railroad from the eastern boundary line of Minnesota, in a north-westerly direction, to the city of Minneapolis. And on December 27, 1881, the Chicago, Freeport and Northwestern Railroad Company was organized under the laws of the State of Illinois, to construct a railroad from a point near the city of Chicago, *via* Freeport, to the north boundary line of the State of Illinois.

On January 4, 1882, there was a consolidation of the Wisconsin corporation and the Minnesota corporation, in pursuance of the statutes of said respective States, and the consolidated company was called the Chicago, Freeport and St. Paul Railroad Company. On March 20, 1882, this Chicago, Freeport and St. Paul Railroad Company of Wisconsin and Minnesota, and the Chicago, Freeport and Northwestern Railroad Company of Illinois, entered into articles of consolidation, which were recorded March 30, 1882, in the office of the Secretary of State of the State of Illinois. By these latter articles of consolidation the new consolidated corporation was to

be known and designated as the Chicago, Freeport and
St. Paul Railroad Company, and its line of railroad was
to extend from a point in Chicago, in a westerly direction,
to Freeport, thence in a northerly direction to Cadiz, in
Wisconsin, and thence in a northerly and westerly direc-
tion to Minneapolis, in the State of Minnesota.

On April 10, 1884, the said consolidated Chicago, Free-
port and St. Paul Railroad Company executed its trust
deed or mortgage to the American Loan and Trust Com-
pany of New York, appellant herein, to secure the pay-
ment of $10,000,000 in first mortgage bonds of $1000 each,
which trust deed, soon after its execution, was recorded
in the counties of Cook, DuPage, Kane, DeKalb, Stephen-
son and Ogle, in the State of Illinois. This mortgage
was upon all the lines and property of the railroad com-
pany in the States of Illinois, Wisconsin and Minnesota,
and covered both the present and the after-acquired prop-
erty of the company. It appears that only 160 of these
$1000 bonds have ever been issued; that said 160 bonds
are outstanding and are held by *bona fide* purchasers for
value, and that none of the past due interest coupons
upon said bonds have been paid. Commencing with May,
1885, and ending with December 30, 1885, said consoli-
dated Chicago, Freeport and St. Paul Railroad Company
procured right of way contracts from forty-eight land
owners, covering about eighteen miles of right of way,
from Maywood, in Cook county, to the Fox river, at St.
Charles, in Kane county, and shortly after these con-
tracts were obtained they were recorded in the respective
counties of Cook, DuPage and Kane.

It appears that about 1854 a corporation was organ-
ized under the laws of Illinois for the purpose of procur-
ing a right of way one hundred feet wide through Cook,
DuPage and Kane counties to the west bank of Fox river,
and building thereon a railroad called the St. Charles Air
Line; that it partially constructed its road-bed, but in
1855 abandoned said right of way and road-bed, and the

former owners of the land taken therefor resumed posses-
sion thereof, and thereafter occupied and claimed owner-
ship of the same uninterruptedly for twenty years.   In
March, 1886, the board of directors of the Chicago, Free-
port and St. Paul Railroad Company adopted and laid
out its line of railroad, one hundred feet in width, upon
the old road-bed of the "St. Charles Line," from a point
at the city limits of Chicago, at a place called Maywood,
to the west bank of Fox river, at St. Charles, in Kane
county.

In February, 1886, the appellee, the Minnesota and
Northwestern Railroad Company, was incorporated un-
der the laws of the State of Illinois, and authorized to
construct, equip and operate a railroad from the city of
Chicago to East Dubuque, in JoDaviess county, and in
April, 1886, it made its surveys over and upon the same
line as that made by the Chicago, Freeport and St. Paul
Railroad Company,—that is to say, over the old "St.
Charles Line," from Maywood, near the city limits of
Chicago, to the west bank of Fox river, at St. Charles;
and before it made its said surveys it was notified that
the Chicago, Freeport and St. Paul Railroad Company
had already surveyed and located its railroad, as above
stated, and had procured the above mentioned contracts
for its right of way, but that deeds therefor had not yet
been taken.   The appellee employed the former attorney
of the Chicago, Freeport and St. Paul Railroad Company,
who had procured the right of way contracts for said
company, to obtain the execution of deeds conveying to
it, appellee, the same lands described in said right of
way contracts, and for the same considerations named in
said contracts.   Most of the land owners executing such
deeds supposed they were executing the deeds called for
by the terms of their respective right of way contracts.
Said attorney obtained deeds conveying said right of way
to appellee, and appellee entered into possession of the
same and constructed thereon its railroad, and is now

using the premises as a part of its railroad route from Chicago to East Dubuque.

On December 27, 1886, appellee, the Minnesota and Northwestern Railroad Company, executed a trust deed to the Metropolitan Trust Company of the city of New York and Robert H. Benson of London, England, as trustees, to secure an issue of $8,000,000 in bonds. Said trust deed was duly recorded, and it purported to convey to the trustees all and singular the railroad of the Minnesota and Northwestern Railroad Company, extending from Chicago to Dubuque, constructed and to be constructed, with all the appurtenances thereto, and all property used in connection therewith, together with all its easements, franchises, privileges and immunities, and all of its right of way. The litigation now before us grows out of a bill in equity exhibited in the circuit court of Cook county by the appellant, the American Loan and Trust Company, as trustee under the trust deed of April 10, 1884, at the request of the holders of the 160 bonds secured thereby, against the appellee, the Minnesota and Northwestern Railroad Company, the Chicago, Freeport and St. Paul Railroad Company, the Chicago, Freeport and Northwestern Railroad Company, and the Metropolitan Trust Company of New York and Robert H. Benson, trustees under the trust deed of December 27, 1886.

The above stated facts are substantially those that appear in the voluminous bill of complaint found in the record, and the bill charges that the "Minnesota Line," in procuring the deeds for said right of way in the manner stated, fraudulently circumvented the "Freeport Line" as to its rights under the contracts of right of way which it had previously obtained by its attorney, and who had recorded the same prior to the execution of said deeds, and that the "Freeport Line" having offered to pay the "Minnesota Line" what it had paid out for the deeds, the title to said right of way lands should be declared to be held by the "Minnesota Line" in trust for the "Freeport Line."

The bill also charges, that although the Chicago, Freeport and St. Paul Railroad Company (the consolidated company,) executed the trust deed to appellant and issued the 160 bonds, yet it was the act and deed of the Illinois corporation, the Chicago, Freeport and Northwestern Railroad Company. The bill prays that appellant be subrogated to all the rights of the "Freeport Line" in reference to the right of way contracts, and that the deed of trust executed to appellant under date of April 10, 1884, be declared a first and prior lien upon the lands described in the right of way contracts, and that an account be taken of the amount due upon the 160 bonds, and that either the Chicago, Freeport and Northwestern Railroad Company (the Illinois company) or the Chicago, Freeport and St. Paul Railroad Company (the consolidated company) be decreed to pay to appellant, upon a day certain, the amount so found to be due, and in default thereof said railroad companies, and all persons claiming under them, be forever excluded and debarred from all equity of redemption with reference to the lands described in said right of way contracts; and that an account also be taken of the amount the "Minnesota Line" paid for the deeds of the land described in those right of way contracts, and if the "Minnesota Line" elects to retain possession and use of the same as its railroad road-bed, it be required to pay to appellant a sum of money not exceeding the amount of the 160 bonds, interest, costs, charges and allowances of this suit, and that upon receipt of the payment of this amount appellant convey to the 'Minnesota Line" all right, title and interest in the usurped right of way lands, as the court may direct. The bill also contains a prayer for general relief. The circuit court sustained a demurrer to the bill and dismissed it out of court, whereupon this appeal was taken.

A motion was made in this court by appellee to dismiss the appeal for want of jurisdiction, and that motion was reserved to the hearing. The ground of the motion

is, that a freehold is not involved, because the object of the bill is simply to enforce and foreclose a lien on real estate. The fourth and fifth assignments of error found in the record are as follows:

"*Fourth*—The court erred in holding that the Chicago, Freeport and St. Paul Railroad Company is an invalid corporation, and without power to execute the trust deed and right of way contracts in controversy.

"*Fifth*—The court erred in holding that the Chicago, Freeport and St. Paul Railroad Company was not a *de facto*, if not a *de jure*, corporation, and that it did not have the power to execute the trust deed and right of way contracts in controversy."

It thus appears that the primary question involved in the litigation is that of the existence or non-existence of a franchise, and this being so, it is immaterial whether a freehold is involved or not. This court has jurisdiction of the cause upon a direct appeal from the circuit court. The motion to dismiss cannot prevail, and is denied.

By an act approved and in force February 28, 1854, railroad companies organized in this State were authorized to consolidate with railroad corporations of other States. (Laws of 1854, p. 9.) But specification 237 of section 1 of "An act to repeal certain acts therein named," approved March 31, 1874, and in force July 1, 1874, (Rev. Stat. 1874, pp. 1012, 1021,) said act of February 28, 1854, was in express terms repealed. The attempted consolidation of the Chicago, Freeport and Northwestern Railroad Company of Illinois with the consolidated Chicago, Freeport and St. Paul Railroad Company of Wisconsin and Minnesota was in 1882. Appellant does not claim that there was at that time any statute of this State that authorized or permitted such consolidation, but contents itself by calling our attention to paragraphs 50, 57 and 65 of chapter 32, and paragraphs 23, 27, 43 and 44 of chapter 114, Starr & Curtis' Annotated Statutes, as being the statutes of the State then in force and pertaining to the

subject, and submits that there was a color of authority for consolidation. Said paragraphs 50 and 57 manifestly have reference only to companies incorporated under the laws of this State, and paragraph 65 does not purport to authorize any consolidation of corporations, but merely makes provision for the debts and liabilities in cases where consolidation is permitted. Said paragraph 23 (sec. 22 of the Railroad Incorporation act of March 1, 1872,) is simply a substantial re-enactment of section 11 of article 11 of the constitution of 1870, and is a mere limitation upon and not a grant of power, and said paragraphs 43 and 44 are paragraphs 34 and 35 of chapter 114 of the Revised Statutes of 1874. One of them empowers railroad companies to enter into operative contracts, and the other gives them the right of connecting with each other and with railroads of other States, upon such terms as may be mutually agreed on.

Attention may, in this connection, be called to the last paragraph of "An act to facilitate the carriage and transfer of passengers and property by railroad companies," approved May 24, 1877, and in force July 1, 1877. (Laws of 1877, p. 167; 2 Starr & Curtis' Stat. p. 1922.) It is there provided: "That nothing in this act shall be held or construed to authorize any railroad or railway company doing business under any charter granted by this State, to consolidate with any railroad or railway company out of this State, so as to form one continuous line of railroad." This legislation, taken in connection with the specific repeal of the act of 1854, seems to indicate a legislative public policy adverse to the consolidation of railroad companies organized under the laws of this State with railroad companies formed in other States. And the same general policy seems to be denoted by the proviso to the act approved March 30, 1875, and in force July 1, 1875. (Laws of 1875, p. 96; 2 Starr & Curtis' Stat. p. 1917.) The proviso is, that nothing in that act shall be so construed as to authorize any cor-

poration acting by or organized under the laws of any other State to purchase or otherwise become the owner of any railroad in this State.

The rule of construction applicable to the several statutory provisions that have been mentioned is, that every power that is not clearly granted is withheld, and that any ambiguity in the terms of the grants must operate against the corporations and in favor of the public. (*Black* v. *Delaware & R. C. Co.* 24 N. J. Eq. 455.)   So the conclusion must be, that in 1882 railroad corporations organized under the laws of Illinois had no authority whatever, unless granted in their respective special charters, to consolidate with railroad companies of other States. Indeed, the statutes of the State then in force seem plainly to show a then prevailing legislative and public policy opposed to such consolidation; and it is hardly necessary to suggest that the act of June 14, 1883, (Laws of 1883, p. 124; 2 Starr & Curtis, p. 1916,) and the act of June 30, 1885, (Laws of 1885, p. 29; 3 Starr & Curtis, p. 1031,) are not retrospective, and do not affect the questions at issue in this litigation.

The principal contention of appellant is, that any attempt at consolidation by a corporation of Illinois, when not questioned by the State itself, is good as against third persons, and especially wrongdoers.   This claim is too broad, and the authorities cited in that behalf do not sustain it.   Corporations cannot be consolidated without express sanction of the State.   But this sanction may be either by authority given in a general law, by the special charters of the consolidating companies, by a statute passed before consolidation, or by a subsequent legislative ratification of an unauthorized consolidation. (4 Am. & Eng. Ency. of Law, pp. 272*i*, 272*k*, and notes; *Pearce* v. *M. & I. R. R. Co.* 21 How. 441; *Clearwater* v. *Meredith*, 1 Wall. 25; *N. Y. & S. C. Co.* v. *Fulton Bank*, 7 Wend. 412.) And if the power to consolidate with other railroads is withheld, it is regarded as a prohibition against the exer-

cise of such a power. 3 Wood on the Law of Railroads, sec. 486.

The rule óf the law, instead of being as broad as is claimed by appellant, may be stated thus: Where there is a *de facto* corporation, its corporate existence, except in a few exceptional cases, cannot be questioned collaterally, and can only be inquired into by the State, and in a direct proceeding. (*Hudson* v. *Green Hill Seminary*, 113 Ill. 618.) But in order that there should be a *de facto* corporation two things are essential: First, there must be a law under which the corporation might lawfully be created; and second, user. Where the law authorizes a corporation, and there is an attempt, in good faith, to organize, and corporate functions are thereupon exercised, there is a corporation *de facto*, the legal existence of which cannot ordinarily be questioned collaterally. This is not only the doctrine of *Hudson* v. *Green Hill Seminary*, *supra*, but of numerous other decisions in this court. And in said *Hudson case* this court quoted with approval the language of the Supreme Court of Indiana in *Williamson* v. *Kokomo Building and Loan Ass.* 89 Ind. 389, as follows: "The rule stated does not go to the extent of precluding strangers from showing that there was no law authorizing a corporation." In *Heaston* v. *Cincinnati, etc. Railroad Co.* 16 Ind. 275, it is held that there must be a corporation *de facto* under an authority sanctioning such a corporation *de jure*. In *Eaton* v. *Walker*, 76 Mich. 579, it is said: "But the two things necessary to show a corporation, even *de facto*, do not exist. There is no law under which the power they assume might lawfully be created, and the mere fact that they assumed to act as such, even in the full belief that they were legally incorporated, would not constitute them a corporation *de facto*." (See, also, *Swartwout* v. *Michigan Air Line Railroad Co.* 24 Mich. 389; *Detroit Schuetzen Bund* v. *Detroit Agitations Verein*, 44 id. 313.) In *Evenson* v. *Ellingson*, 67 Wis. 634, it is held that a body which cannot become a corporation *de jure* cannot

become a corporation *de facto.*   In *City of St. Louis* v. *Shields,*
62 Mo. 247, it is held that if a corporation be acting under
legislative sanction and color of law, its corporate char-
acter cannot be questioned collaterally.   In *Pape* v. *Cap-
itol Bank,* 20 Kan. 440, in discussing the matter of a *de facto*
corporation, it is said by BREWER, J., that the charter of
a corporation, with acts of user, is sufficient as against
collateral inquiry ; that the same principle obtains in
respect to incorporations organized under a general law,
but that there must in such cases be a law under which
the incorporation can be had.   And see, also, Cooley's
Const. Lim. (6th ed.) p. 310.

The authorities relied on by appellant do not support
its proposition that an attempt at consolidation by a cor-
poration is good as against third persons.   In *Leavenworth*
v. *Chicago, etc. Railway Co.* 134 U. S. 688, the consolidation
was under a statute of the State of Missouri, which pro-
vides:   "A certified copy of such articles of agreement,
etc., shall be filed with the Secretary of State, when the
consolidation shall be considered duly consummated, and
a certified copy from the office of the Secretary of State
shall be deemed conclusive evidence thereof."   In the
case at bar there was no statute under which the consoli-
dation could have been made, and the act of the Secre-
tary of State in filing and recording the agreement for
consolidation was wholly without warrant or authority
of law, and consequently had no effect to either legalize
the supposed consolidated company or give it the status
of a *de facto* corporation.   In *Mitchell* v. *Deeds,* 49 Ill. 416,
the laws of both Illinois and Wisconsin authorized con-
solidation.   In *President and Trustees* v. *Thompson,* 20 Ill.
197, it is held that to prove the existence of a corporation
it is sufficient to produce the charter and prove acts done
under it.   And all the other cases cited, so far as they
are within our reach, are either of like character, or else,
by their facts, cases of corporations by way of estoppel
as against those challenging corporate existence.   Our

attention is called to no case in which it is held that in the absence of any general law or special charter, or other statute authorizing incorporation or consolidation, as the case may be, and also in the absence of subsequent legislative ratification, the juristic personality of a corporation or consolidated corporation is complete and conclusive against all the world except the sovereign power.

For the reasons we have stated the supposed consolidated corporation of the States of Wisconsin, Minnesota and Illinois, called the Chicago, Freeport and St. Paul Railroad Company, is not, and never was, a corporation, either *de jure* or *de facto*. The right of way contracts and the trust deed made to appellant were and are invalid, and this because there was no corporation in existence with capacity to either obtain a right of way, or contract or act or be bound. *Pearce* v. *M. & I. R. R. Co.* 21 How. 441.

The contracts for right of way can not be regarded as contracts made by the land owners with the Chicago, Freeport and Northwestern Railroad Company of Illinois. They do not purport to be the contracts of said company, and there are no facts stated that show that they are its contracts. The supposed consolidated corporation, being without capacity to make a contract, could neither bind itself nor the Illinois corporation. The resolutions of the Chicago, Freeport and Northwestern Railroad Company of Illinois, that are set out at large in the bill of complaint, avail nothing. The proposed authority to execute a trust deed and bonds was an authority that was to be exercised either by the Illinois corporation itself, or by a consolidated corporation of Illinois, Wisconsin and Minnesota, and the Illinois company executed no such deed or bonds, and no such consolidated corporation ever had either a *de jure* or *de facto* existence. Besides this, the Illinois company had no power or authority to issue bonds, or authorize any other person or corporation to issue bonds, for the purpose of constructing railroads in the States of Wis-

consin and Minnesota. The capital and property of the Chicago, Freeport and Northwestern Railroad Company of Illinois could not lawfully be subjected to the payment of the liabilities of the Chicago, Freeport and St. Paul Railroad Company, that was lawfully organized under the laws of Wisconsin and Minnesota for the construction of certain railroads in said States. The demurrer to the bill of complaint admits only the facts that are well pleaded, and not the conclusions of law that are stated by the pleader.

The view we have taken of the case renders it unnecessary to consider or decide various other matters that are discussed by counsel.

We think there was no error in sustaining the demurrer and dismissing the bill. The decree of the circuit court is affirmed.

*Decree affirmed.*