LOUISVILLE TRUST CO. v. LOUISVILLE, N. A. & C. RY. CO. et al.

(Circuit Court of Appeals, Seventh Circuit. February 5, 1898.)

No. 420.

1. MORTGAGE FORECLOSURES—PARTIES—GENERAL CREDITORS.
　　Mere general creditors are neither necessary nor proper parties to a suit to foreclose a mortgage; and if permitted by the court merely to file an intervening petition, without tendering any issue or asking leave to file an answer or other pleading, such intervener has no standing in court to question the validity of the foreclosure sale.

2. SAME—DE FACTO CORPORATION.
　　A general creditor, whose claim arose under a contract with a de facto consolidated corporation, cannot question the validity of the consolidation for the purpose of invalidating the corporation's mortgage bonds.

Appeal from the Circuit Court of the United States for the District of Indiana.

On August 24, 1896, John T. Mills, Jr., filed a judgment creditors' bill in the circuit court of the United States for the district of Indiana against the Louisville, New Albany & Chicago Railway Company, and procured the appointment of a receiver, who took possession of the property. On November 12, 1896, the Farmers' Loan & Trust Company and John H. Barker, trustees, filed their bill of complaint to foreclose a mortgage upon the property of the railway company, known as the "consolidated mortgage," securing $4,700,000 of 6 per cent. consolidated bonds. The foreclosure was based upon an allegation that default was made in the payment of the interest upon the bonds secured by said mortgage maturing on October 1, 1896. On the same day the Central Trust Company of New York and John H. Stotsenburg, trustees, filed their bill of foreclosure against the railway company to foreclose the mortgage known as the "general mortgage," securing an issue of $2,800,000 5 per cent. general mortgage bonds. This foreclosure was based upon an allegation of default in the payment of interest on the said bonds maturing November 1, 1896. On November 12, 1896, the two foreclosure bills were, by order of the court, consolidated with the creditors' bill in one cause, to proceed under the title of the Farmers' Loan & Trust Company of New York and John H. Barker, complainants, against Louisville, New Albany & Chicago Railway Company. On December 14, 1896, the Central Trust Company of New York and James Murdock, trustees, filed their bill of foreclosure against the railway company to foreclose the mortgage known as the "equipment mortgage," securing bonds whereof $709,000 of principal were alleged to be outstanding; the said equipment mortgage being a first lien upon a large amount of equipment, and a subordinate lien upon the property of the railway company covered by its other

mortgages. The foreclosure was based upon allegations of default in the payment of the interest maturing on December 1, 1896. On December 21, 1896, the last-mentioned suit was consolidated with the other consolidated suit under the same title. On December 24, 1896, the Farmers' Loan & Trust Company and John H. Barker, as trustees, filed an amended and supplemental bill, which related to the property of the Orleans, West Baden & French Lick Springs Railway Company and the Bedford & Bloomfield Railroad Company, which last-mentioned companies had conveyed their properties, by way of mortgage, to the said trustees, as additional security for the consolidated bonds. On January 13, 1897, the Orleans, West Baden & French Lick Springs and Bedford & Bloomfield Companies were made parties defendant to the bill of the Farmers' Loan & Trust Company and John H. Barker. The defendant railway corporations filed an answer to the several bills of foreclosure, which did not put in issue any of the material allegations of said bills. The Central Trust Company, Stotsenburg, and Murdock, trustees, filed an answer to the bill of the Farmers' Loan & Trust Company and Barker, admitting the allegations of the bill and amended and supplemental bill of those complainants. On January 23d, the pleadings of all the parties defendant to the original bills being upon file, and there being no material allegation of any of the foreclosure bills in issue or denied, and no proofs being necessary in order to render a decree upon the foreclosure bills, application was made to the court for a decree of foreclosure and sale. On the same day, the Louisville Trust Company filed an intervening petition. This petition merely alleged the incorporation of the Louisville Trust Company, the fact that it was the holder of 125 bonds of $1,000 each, made by a corporation known as the Richmond, Nicholasville, Irvine & Beattyville Railroad Company, and alleged to have been guarantied by the Louisville, New Albany & Chicago Railway Company, which remained unpaid, and the interest upon which was in default; that the Louisville, New Albany & Chicago Railway Company was authorized to make the guaranty, and that its right and power to do so had been adjudged in a suit in the circuit court of the United States for the district of Kentucky; that the Louisville, New Albany & Chicago Railway Company was indebted to the petitioner in $125,000 and interest; and it prayed that the petition might be filed, and an order entered authorizing petitioner to appear in its own behalf, and in behalf of all others holding similar claims, and take such steps and proceedings as it might be advised by counsel. This intervening petition did not contain allegations tending to controvert any matters contained in the foreclosure bills, and tendered no issue whatever. Upon said petition, an order was made that the Louisville Trust Company and the Kentucky National Bank be admitted to appear in the proceedings in the cause, each on its own behalf. No answer or other pleading of any kind was tendered to the court or was ever suggested. On the same day, the court made and entered the decree of foreclosure and sale. The decree directed foreclosure of the several mortgages, but reserved full power to adjudge with respect to the income of the receivership and the rights of creditors in and to the same. On February 27, 1897, more than a month after the decree was entered, the appellant filed another petition. In this petition various charges and allegations were made tending to negative the right of the trustee to foreclose their mortgages, and the prayer of the petition was to the effect that the decree of foreclosure and sale should be set aside; that the consolidations by which the mortgagor company was created should be adjudged to be void; that its mortgages should be declared to be invalid; that the assets and liabilities of the railway company should be ascertained; and that the amount of such assets should be declared to be a fund to be distributed among general and unsecured creditors; and, further, that an order be entered commanding some of the parties to the consolidated cause, but not all, to appear within a time to be fixed by the order of the court, and to plead or make answer to the allegations of the petition. No such order was ever made or applied for. But on March 9, 1897, the day before the day fixed for the sale under the decree, it appears that the petition of February 27, 1897, came on to be heard, and was argued by counsel, and that the court refused to vacate the decree of foreclosure and sale, or to postpone or adjourn the sale. The sale was duly made to F. P. Olcott, Henry W. Poor, and Henry C. Rouse, as a committee for the

bondholders.   On the day of the sale, viz. March 10, 1897, application was made to confirm the sale and the master's report; and, all the parties to the foreclosure bills appearing and consenting, an order of confirmation was entered.   The Louisville Trust Company, on May 1, 1897, filed its petition of appeal and assignment of errors, and said petition was allowed.   The appeal is taken from the decree of foreclosure and sale, and from the order denying the application to set the same aside.

St. John Boyle and Swager Sherley, for appellant.

Adrian H. Joline, for appellees.

Before JENKINS and SHOWALTER, Circuit Judges, and BUNN, District Judge.

BUNN, District Judge, after stating the facts as above, delivered the opinion of the court.

There are several reasons why the decree in this case should not be disturbed.

1. The intervening petitioner, who is the appellant here, had no standing in the court below.   At best, it was only a general creditor of the defendant company, having and claiming to have no interest in or lien upon the real estate and franchises of the company which formed the subject of the foreclosure suits.   The petitioner claims to be the owner and holder of certain bonds issued by the Richmond, Nicholasville, Irvine & Beattyville Railroad Company, the payment of which was guarantied by the defendant the Louisville, New Albany & Chicago Railway Company, which bonds remain unpaid.   It is well settled that, in a foreclosure proceeding like this, unsecured creditors having no judgment or other lien upon the real estate cannot be made defendants.   They are neither necessary nor proper parties. Bronson v. Railroad Co., 2 Black, 524; Stout v. Lye, 103 U. S. 66; Herring v. Railroad Co., 105 N. Y. 340, 12 N. E. 763; Jones v. Winans, 20 N. J. Eq. 96.

In the case of Bronson v. Railroad Co., supra, it is said:

"But was it ever seriously maintained that a general creditor, having no specific lien, had a right to interfere in the contests between his debtor and third parties? * * * If the right was conceded to one creditor, it would have to be to another; and where the creditors are numerous, as in the case of railroad bondholders, the exercise of the right would lead to great embarrassment."

In the New Jersey case cited, a general creditor had presented a petition, asking to be made a party defendant in a foreclosure case, and the chancellor said:

"The petitioner has no judgment or other lien on the land.   He is in the position in which any creditor at large of Winans stands.   No such creditor is a necessary party to a bill to foreclose; nor could he be properly made a defendant.   There is no authority or precedent for such an order as is asked for in this case, and it is against the settled principles on which the practice of the court is founded."

In the case at bar, no doubt, the circuit court exercised a discretion in allowing the appellant to come in, in order that it might be in condition to keep an eye on the proceedings, and to be ready to protect its interests in any surplus that might remain after the bondholders and other secured creditors were paid.   The petitioner, after being

allowed to file its petition, did not tender any issue nor ask leave to file any answer or pleading, so that there was no occasion for the complainants to offer any evidence to substantiate the allegations of the bill, but a decree of foreclosure was regularly and properly rendered upon the bill and answers. Now, the appellant comes to this court, and asks for all the benefit and advantage that it might have had if it had asked and obtained leave to put in an answer, and had produced evidence to defeat the equities of the bill. We know of no precedent for such a practice. It would be a travesty upon equity proceedings. The case stands here as though the equities of complainants' bill had been established by competent and sufficient evidence in the court below. The appellant's original petition alleged nothing whatever against the foreclosure or the validity of the mortgages, or the equities of the complainants' case, but merely set up facts which would entitle the petitioner to share in any surplus or assets not covered by the mortgages. It was filed on the same day that the decree was entered. The complainants were not notified that there was any dispute as to the merits of the foreclosure. What should the complainants do? Must they delay the foreclosure, and coax the petitioner to put in an answer disputing their right to the relief sought? There was nothing secret about the foreclosure proceedings. They had been pending for some time, and the case was ripe for a decree, which was regularly entered upon bill and answer.

2. The sole ground of objection to the complainants' case in the court below, as set forth in the petition of appellant, and which was filed after a decree was taken, and which was addressed to the discretion of the court asking to have the decree set aside, was the total invalidity of the various bonds and mortgages, because the defendant corporation, which is a consolidated company, was never regularly consolidated, and that under the law of Illinois and the decision of the supreme court in the case of American Loan & Trust Co. v. Minnesota & N. W. R. Co., 157 Ill. 641, 42 N. E. 153, a railway corporation of Illinois could not be consolidated with a railway corporation of another state. In answer to this claim, it is alleged on the part of the appellees that there was no property of the defendant company in Illinois except some leasehold interests, and that an examination of the case in the Illinois supreme court shows that it has no application to such a case as this, and that it is well-settled law that in an action to foreclose a mortgage securing bonds of a consolidated corporation of two different states, where from the time of consolidation it exercised the franchises of a consolidated corporation without objection from the state or the stockholders who appeared and voted as its stockholders at its annual meetings, it is a de facto corporation, and both such de facto corporation and its stockholders and creditors who claim to be general creditors of the same de facto corporation are estopped to assert its unauthorized existence as a corporation to avoid the bonds, which no doubt furnishes a complete answer to the contention, provided it were essential to meet that contention here on the merits as though it had been litigated and passed upon in the court below, and an appeal taken from the decision. The

case of Farmers' Loan & Trust Co. v. Toledo, A. A. & N. M. Ry. Co., 67 Fed. 49, is directly in point upon this question.     See, also, Dallas Co. v. Huidekoper, 154 U. S. 654, 14 Sup. Ct. 1190.     Both the appellant and appellees have dealt with this defendant corporation as though it had a legal existence.     One who deals with a corporation as existing in fact is estopped to deny, as against the corporation, that it has been legally organized.     Close v. Cemetery, 107 U. S. 466, 2 Sup. Ct. 267.

In the recent case of Continental Trust Co. v. Toledo, St. L. & K. C. R. Co., 82 Fed. 642, a similar question was presented, and the petitioner's right to allege the invalidity of bonds denied.     In that case, which, like this, was one of several bills consolidated, the parties were allowed to come in and defend, on the ground that some of the cases consolidated were not foreclosure cases, but suits brought by unsecured creditors in the nature of creditors' bills, it being conceded that in a foreclosure bill a general creditor could not contest the validity or the amount of the mortgage lien.     The bondholders, however, had made themselves parties to the creditors' bill by a committee, and had set up their claims and liens, and on this ground the creditors were allowed to attack the validity of the bonds secured by mortgage.     But the court, when it came to the question of the creditors' alleging the invalidity of the bonds on the general ground that the corporation had no valid existence, distinctly denied such right.     On that question, Taft, Circuit Judge, in his opinion says:

"Let us consider first the averment that the Toledo, St. Louis & Kansas City Railroad Company is neither a corporation de jure nor a corporation de facto. Can such a defense be urged by one purporting to be a creditor of the pretended corporation?  If the bonds are null and void because the corporation issuing them was a nullity, clearly the debts of the petitioners and the complainant are in no better condition, and the court has nothing upon which to exercise its jurisdiction. * * * So long as they (the petitioners) owe their right to be in court at all to the sufficiency of the averments of the bill for the relief asked, they cannot be heard to question the very basis upon which alone the court can act.  If it is true that the defendant in the bill is not an entity at all, but only an empty name and nullity, the bill must fail for want of a defendant, and with it must fall all the petitions herein. * * * It hardly seems necessary to point out that a defense urged by one creditor against the claim of another, which must defeat, not only that at which it is aimed, but also that of the complainant and all other claims, and which denies the existence of the defendant against whom the action was brought, cannot be permitted to an intervener."

These remarks are peculiarly applicable to the case at bar, where the appellant occupies the anomalous attitude of denying the capacity of the defendant corporation to issue its own bonds to secure its own indebtedness, and to enable it to carry on its own business, while claiming that it had power to guaranty the bonds of another railroad company.     Such a contention cannot be allowed.     There is a motion in the case to dismiss the appeal, which need not be considered.

The decree of the circuit court is affirmed.