## Sara B. Dempster et al., Executors, Appellants, v. Killian V. Lansingh et al., Appellees.

### Gen. No. 14,536.

1. RES JUDICATA—*against whom doctrine of applies.* Even though one may take no active part in litigation, if he knows of its pendency and reaps the fruits of its results, he is bound by the adjudications thereof.

2. RES JUDICATA—*when authority to maintain action cannot be questioned.* If a party stands by for years with knowledge that he is a party to litigation and receives the substantial result thereof, he is estopped to deny that such action was instituted without authority.

3. RES JUDICATA—*extent of application of doctrine.* The doctrine of *res judicata* extends, under some circumstances, not only to questions which were in fact litigated, but to those which might have been, as growing out of or being part of the subject-matter of the controversy.

4. JURISDICTION—*power of court to retain.* A decree may be finally entered in a cause which is appealable and yet the chancellor may with propriety reserve jurisdiction to enlarge or extend the same with respect to certain matters.

5. TRUSTEES—*when compensation cannot be questioned.* A party to an agreement having for its object the assertion through the

medium of trustees of certain disputed rights, having obtained such rights as the result of litigation cannot question the compensation received by one of such trustees from parties other than himself.

6. PLEADING—*what admitted by demurrer.* A demurrer admits all facts well pleaded but it does not admit the truth of conclusions drawn, of which the facts alleged do not warrant a fair inference. Conclusions of law, whether correctly or incorrectly stated, are not admitted by a demurrer. It is for the court to state and lay down the law which it shall adjudge to be applicable to the facts before it.

Bill in chancery. Appeal from the Circuit Court of Cook county; the Hon. Thomas G. Windes, Judge, presiding. Heard in this court at the March term, 1908. Affirmed. Opinion filed June 8, 1909.

Cannon & Poage, for appellants; John B. Heine-mann, of counsel.

Robert F. Pettibone and William S. Freeman, for appellees.

Mr. Justice Holdom delivered. the opinion of the court.

This is an appeal from a decree of the Circuit Court dismissing the bill of complainants, several times amended, for want of equity, in accordance with the recommendations of the report of a master, to whom the cause had been referred to take proofs. The decree was entered after the chancellor had sustained the demurrer of certain of the defendants to portions of the bill as finally amended, upon the theory that the rights of complainants' testator had been determined in the equity suits of Lansingh et al. v. Higgins et al. and Hopkins et al. v. Kean et al. in that court, and that the doctrine of *res adjudicata* was a barrier to the granting of any further relief. The proceedings in these two equity causes, the matters in controversy and the ultimate decision of them, are set up and sufficiently appear in the several averments of the bill as finally amended. The litigation here . involved appears from the averments of the bill and its several amendments to have been continuously in the

Circuit Court for a period of time exceeding a quarter of a century, and the matters involved date back to as remote a time as the year 1859. These matters are intricate and involved and cover many transactions, and originally involved an accounting of wide scope among many different parties. We do not deem it at all expedient or necessary to go over in this opinion in any extended detail the questions here involved and ultimately disposed of in a learned and extended opinion of our Supreme Court in Lansingh v. Higgins, 154 Ill. 301, but content ourselves by referring to the opinion and adopting the same, so far as it is germane to our decision of this case, as a part of this opinion. The matters involved in the Higgins and Kean suits related to the management for many years of the Rosehill Cemetery Company and the ownership of its stock. The title to the stock claimed by David S. Dempster was settled in the Higgins suit. The rights of Dempster were confined to the ownership of fifty shares of the stock of the Rosehill Cemetery Company. The right to these fifty shares he originally acquired on May 21, 1885, by the purchase of certificate numbered 3 for fifty shares of what was denominated "Conditional Scrip" of the Rosehill Cemetery Company. Prior to the purchase of this scrip, Dempster had no interest in the Rosehill Cemetery Company, its conditional scrip or its stock. This is the scrip which Dempster afterwards placed in the hands of Lansingh as trustee under the agreement hereinafter referred to, and for which he subsequently procured through Lansingh, as the result of a decree in Lansingh v. Higgins, fifty shares of the capital stock of the Rosehill Cemetery Company.

On January 20, 1882, certain of the stock and scrip owners entered into an agreement with each other to secure their rights in the Rosehill Cemetery Company. To this agreement David S. Dempster was not a party. Afterwards another agreement was made between the stock and scrip owners, to which David S. Dempster

became a party in 1895, ten years after he bought the
fifty shares of "conditional scrip." By the terms of
this agreement the stock and scrip of the parties were
placed in the hands of Kean and Lansingh, with full
power to manage and control the same. As the agree-
ment appears in complainants' bill, we think it help-
ful to a proper understanding of the force and effect
of this agreement to set it forth here in *haec verba*.
It is as follows:

"Whereas the undersigned hold certificates of stock
or conditional scrip of the Rosehill Cemetery Com-
pany, to the amounts set opposite our respective
names and numbered as set forth herein, the cash
value of which is unknown but is understood to be
greatly depreciated by the management of the said
Cemetery Company in the interest of certain stock-
holders, bond holders, 'and holders of indebtedness
against said company, to the great injury of other
stockholders and against the interests of the under-
signed.

"And the undersigned desire to unite our stock and
scrip according to our respective interests in a com-
mon and united effort to secure by proper negotiations
or by legal proceedings (if necessary) a proper value
or price for our stock or scrip and a proper recogni-
tion of our rights as stockholders in said cemetery
company.

"Now, therefore, we hereby severally agree with
each other, as follows: said stock and scrip so repre-
sented by us severally shall be and hereby is placed in
the possession, management and disposing control of
Samuel A. Kean and Killian V. R. Lansingh. They
and each of them are authorized and empowered, and
we and each of us hereby severally make, constitute
and appoint said Samuel A. Kean and Killian V. R.
Lansingh and each of them the true and lawful at-
torneys and attorney irrevocably, for us and each of
us, and in our and each of our names, places and stead
for the following purposes: now and from time to
time hereafter to institute, prosecute and complete all
negotiations, investigations, legal proceedings and all
other lawful proceedings which in their judgment shall

be proper, in order to elucidate and clear up the affairs and the amount of the debts and assets of the Rosehill Cemetery Company as well as to ascertain what is the actual amount and state of our interests in said Company and in its property and to secure the highest value and obtain the best price therefor and for our said stock and scrip.

"And for the same purposes to employ counsel and experts and such other persons as they may think proper, and to make all and singular such contracts, settlements, compromises, sales, transfers and assignments of or concerning said stock and scrip and our interests in said Company and its property and any part thereof as in their judgment shall seem meet.

"To vote upon and in all respects control, dispose of, and act as the owners of said stock, and also of said scrip, at all meetings of said Company or its stockholders, and in all matters and transactions of or concerning said company, both individually and as stockholders, and as parts of said Company, and in all things to have full and disposing power and ownership of said stock and scrip and our interests in said company and its property, only according to us *pro rata* as hereinafter provided.

"When, in the judgment of said Samuel A. Kean and Killian V. R. Lansingh the purposes of this instrument are accomplished as fully as they consider wise and proper, they shall make account and distribute to each of us *pro rata* according to our present respective interests, the proceeds of said stock, scrip and interests, and whatever, if any, of the original stock, scrip and interests shall remain after first deducting a reasonable compensation to them and all expenses, costs and liabilities heretofore or hereafter incurred by them or others under their direction.

"The powers herein conferred are coupled with an interest in said Kean and Lansingh and in each of the undersigned, and is irrevocable.

"It is agreed that our said stock, scrip and interests are pledged *pro rata* for all the costs and expenses of the negotiations, investigations and proceedings herein provided for, and also those which have been heretofore made by them for the same purposes, or

which in the judgment of said Kean and Lansingh, or either of them, are expedient, including a reasonable compensation to them for their services.

"And we severally agree to and with said Kean and Lansingh and each other not to sell or dispose of or attempt to sell or dispose of our respective stock, scrip, or interests, or withdraw the same from this agreement, without the written consent of each and all of them."

The signature of Dempster to this agreement is signed thus: "David S. Dempster per W. D. excepting as to the compensation to the trustee." W. D., as we gather from the record, is Wesley Dempster, about whose authority to sign no question is raised. Lansingh and Kean executed the agreement, after the signature of some of the other stock and scrip owners, in these words: "We accept the trust hereby conferred upon us.

K. V. R. Lansingh,<br>Samuel A. Kean."

Kean took no active part in discharge of the trusts of the agreement, but the whole management was assumed and the duties of the trust discharged by Lansingh alone. The whole contention and claim of complainants rests on the claimed right to attack the *bona fides* of Lansingh in acquiring certain stock of the Rosehill Cemetery Company as compensation for his efforts and services in procuring favorable decrees in the Higgins and Kean litigation, and an enforcement of the rights of the scrip and stock owners, which made valuable that which was before valueless. That Dempster finally, through the litigation, received from Lansingh the full amount of the stock of the Rosehill Cemetery Company called for by his "conditional scrip" is nowhere denied. That this was made possible after extended litigation instituted by Lansingh is not disputed. That such a favorable result was finally reached after much litigation, fostered and brought about by Lansingh, the record amply demonstrates. That without these efforts so successfully put

forth by Lansingh, the scrip and stock would have been of little or no value, seems, from the voluminous record before us, beyond cavil or dispute. Heeding the conditions under which Dempster signed the agreement and the further fact that Lansingh did not obtain for himself any portion of the stock which Dempster was entitled to or claimed under his scrip delivered to Lansingh under the terms of the agreement referred to, we do not regard Dempster or his personal representatives as being in a position to complain or to challenge the right of Lansingh to the stock he received as compensation for his services, all of which came from persons other than Dempster, and in which at no time did Dempster have any interest or claim. Dempster refused to be bound by that part of the agreement which provided for compensation or remuneration for services to be rendered; consequently he was not liable for such services, except as he might become so by some subsequent agreement for compensation or upon a *quantum meruit* for the value of such services as inured to his benefit, and of which service he may have availed to his profit. As a matter of fact, Dempster voluntarily contributed to defraying a portion of the expenses incurred in the original suit of Lansingh v. Higgins.

The demurrers to portions of the bill as amended were sustained upon the theory that the doctrine of *res adjudicata* as applied to the cases of Lansingh v. Higgins and Hopkins v. Kean barred Dempster from obtaining any further relief. The master reported that the chancellor's rulings upon the demurrers precluded an impeachment of the ownership of the stock, the title to which was attacked by the bill, thus cutting out in a measure the ground upon which an accounting could be predicated, and in faith of the strength of such condition recommended a dismissal of the bill for want of equity. In the latter course complainants seem to have acquiesced, upon the assumption that whatever could be ultimately recovered by an account-

ing, under the restricted investigation permitted after
the chancellor's rulings upon the demurrers, would not
be worth while; so that they were willing to risk a
small loss on the chance that a reversal of the chancel-
lor's holding as to the application of the doctrine of
*res adjudicata* would open up to them the right to re-
cover on an accounting the full amount of their claim.

Before proceeding to discuss the merits of the de-
murrer or the conclusions thereon to which the learned
chancellor of the Circuit Court arrived, we will note
some phases of the case as applied to the facts not in-
volving the application of the doctrine of *res adjudi-
cata.* One of the special causes assigned by the de-
murrer is the following: "That complainant never
paid Lansingh compensation, and it does not lie in
complainant's mouth to complain of what other parties
to said agreement paid Lansingh, and such payments
have been confirmed and established by decrees of the
Circuit Court attached to said amended bill." That
Dempster contributed toward no part of the compen-·
sation received by Lansingh in satisfaction for serv-
ices rendered, is not seriously questioned. What Lan-
singh did in fact receive for his services was 220
shares of the Rosehill Cemetery Company stock. These
220 shares were contributed by Preston Kean, John
Dempster Estate, the Shermans, George H. Scranton
and Oliver S. Goss, none of whom is complaining or
attacking the verities of the transaction. It is quite
apparent that in a measure David S. Dempster bene-
fitted from the services of Lansingh for which the 220
shares of stock were given to him by the parties just
named, in compensation, and it is just as clear that
Dempster's executors have no cause of complaint for
any reason, but, on the contrary, should be satisfied
with the bargain Lansingh made, which operated to
release Dempster from liability for valuable services
inuring to his benefit, without any outlay aside from
the original amount freely contributed by him toward
the expense of the litigation in Lansingh v. Higgins.

That the doctrine of *res adjudicata* is a complete bar to the maintenance of the bill as amended in this record, in virtue of the decrees in Lansingh v. Higgins and Hopkins v. Kean, *supra*, seems to be, inferentially at least, admitted by complainants from their attitude of denial that in these proceedings the name of David S. Dempster was used with authority; or that, if with authority, by implication then that Dempster was not such an "adversary" party (because he received nothing but what was admittedly his due) as makes the decrees as to the ownership of stock by Lansingh binding upon him.

There are many cogent reasons which, to our minds, demonstrate the lack of merit of these contentions. The agreement above set out in *haec verba* contained sufficient authority, clothed in no doubtful language, empowering Lansingh to invoke legal process in Dempster's name; for it is plain from the spirit of the agreement that little, if anything, could be expected of advantage to Dempster and his associates from the persons then in physical control of the property and assets and stockholdings of the Rosehill Cemetery Company, short of the compelling process of a court of equity. As matters then stood, Dempster's fifty shares of conditional scrip were worth nothing. He became a party to the Lansingh and Higgins suit by intervening petition. By the decree of the Circuit Court he was adjudged to be the owner of fifty shares of stock on condition that he paid for them the sum of $5,000. To this time Higgins, Blodgett and the other parties in control of the Cemetery Company, insisted that the issue of script was void. On Higgins's appeal to this and the Supreme Court, Dempster assigned cross-errors, among which is the following: "The court erred in finding that the complainant (except as to certificates numbered 1 and 2) and the intervening petitioners should pay to the Rosehill Cemetery Company the par value of the so-called stock respectively coming to them, and in finding that noth-

ing had been paid to said company for any of the stock or scrip except said certificates numbered 1 and 2." On this cross-error Dempster was successful; the Supreme Court saying in deciding this cross-error in Lansingh v. Higgins, *supra*: "As the Company, by successive boards of managers, elected, in the main, by the creditors and not by scrip holders, not only acquiesced in the transaction, but ratified it in many ways, as before shown, through a period of more than twenty years, it is now too late for the Company to avoid it. The same reasoning also leads to the conclusion that this stock and scrip must be treated as having been fully paid for, and that it would be inequitable to require the holders of it to pay for it again on any basis which could now be fixed, as a condition of equitable relief. We think the trial court erred in requiring such payment, and the decree in that respect is reversed." Following the mandate of this opinion, the Circuit Court entered a decree in strict conformity with it, and under the decree as so entered Dempster secured, without further payment, fifty shares of the Cemetery Company stock. There is no pretense but Dempster knew of the pending litigation. He may not have actively participated in its conduct. Lansingh was furnishing the legal ammunition to carry forward the legal battle, so that there was no occasion for any open activity on Dempster's part. He had knowledge of the proceedings and voluntarily reaped the fruit of the decisive victory. He is, on every known legal principle applicable to such a condition, precluded from avoiding their full force and binding effect. But, say counsel, he was not an "adversary" party, and only secured that to which he was entitled. It might well be answered, that is all any one secures as the result of successful litigation, and we might content ourselves by leaving such contention with this observation but we refrain from so doing without recalling some of the facts, because the position so assumed is so strikingly untenable in the light

of these facts. It is plain that all of Dempster's interests in the Cemetery Company were at stake. His interests were *nil* except as otherwise established by litigation and enforced under the power of the law. Higgins and his associates asserted that Dempster's scrip was valueless and its issue a void act on the part of the Company. The learned chancellor disagreed with the void part of the contention, but held while the issuing of the scrip was lawful enough, yet it had not been paid for to the Company, so that Dempster, if he wanted fifty shares of company stock for his scrip, must pay the face value of the stock—$5,000. The Supreme Court held that the dealings of the Company had been such for twenty years in the management of those alien to its lawful stockholders, without questioning the lawfulness of the issuance of the scrip, that the company could not be heard at so remote a day to contend that the scrip had not been paid for, and that its holders were consequently entitled to the stock called for by the scrip without further payment. Under such holding Dempster got his stock. This does not have the appearance of conceded rights conferred as a matter of course and without contention.

What Dempster finally got was the result of the successful prosecution by Lansingh of Dempster's claim against many obstacles created by eminent legal talent in the manipulation of the Cemetery Company's affairs, and in resisting the efforts of Lansingh to have the courts enforce the rights of the scrip and stock owners. Again, Dempster, pending the decision of the Supreme Court, joined in a petition for the appointment of a receiver for the Rosehill Cemetery Company, and after the decision was rendered, joined in a motion that the court call a stockholders' meeting for the election of a board of managers of the company, as four of the seven members of the board had died and the board consequently lacked a quorum to transact business. The court called an election as requested, and Dempster voted his fifty shares of stock

at such election and thereby participated in the election of managers.

Through all the years of litigation Dempster stood by with knowledge of his being a party to all of it. He reaped the fruit of the litigation; he received in virtue of it that which was of intrinsic value, which before the litigation was valueless; and we are therefore of the opinion that on plain equitable principles he and those claiming under him are estopped to deny that such litigation was inaugurated and maintained without sufficient authority. Subsequent ratification is as binding as express authority. Acts which constitute ratification are as conclusive on all parties as formal authority by word or writing.

In Hopkins v. Kean, Dempster was a party, and with others filed a cross-bill and obtained an adjudication settling the contentions of all the contestants, which included the title and liens to claims to the stock now in question. The verity of the decree in that case has never been challenged. In the two chancery cases combined, the rights of all parties claiming any interest in its stock or the Rosehill Cemetery Company as creditors or lien holders have been determined and settled. It would seem that whatever other claims Dempster may have had, and which he might have brought forward in either of these proceedings, if they were of such a nature that the court could have granted appropriate relief, he must be held to be barred from now setting them up. The doctrine of *res adjudicata* extends, under some circumstances, not only to questions which were in fact litigated, but to those which might have been, as growing out of or being part of the subject-matter of the controversy. Stickney v. Goudy, 132 Ill. 213.

Whatever rights Dempster may have had in the stock procured by Lansingh from stockholders other than Dempster, in settlement of his claim for remuneration under the agreement, in power of which Lansingh maintained and successfully prosecuted the Hig-

gins case, Dempster could have presented and urged when the matters concerning ownership and title to the stock of the several parties were before the court. Not having done so, the present bill comes too late for any such purpose.

An examination of the decrees of 1890 and 1895 refutes the contention of complainants that the court was without jurisdiction to change them in 1896. The court in express terms reserved in the decree jurisdiction of the parties and the cause, and the power to change or enlarge these decrees. While each decree may have been of such finality as to support an appeal, yet the court may still possess jurisdiction to enlarge such decree or enter another in furtherance of the purpose of carrying into complete effect its provisions. A familiar instance of such condition often arises in foreclosure proceedings. The decree settling the rights of the parties, fixing the amount of indebtedness and ordering its payment and, in default, a sale of the mortgaged premises, is so far final as to be appealable, notwithstanding the fact that the ultimate final order in the cause is the decree approving the sale of the mortgaged premises. So in a bill for an accounting in matters of partnership or a decree of sale of real estate in the estates of minors, intestates and those laboring under legal disabilities. The decree which finds and settles the rights of the contestants is final and appealable, but the court always retains jurisdiction to enter such further orders or decrees, to the end that complete justice may be done between all the parties, necessary to carry into practical effect the original decree of the court. We are therefore of the opinion that the court did not err in the entry of decrees subsequent to the primal decree of 1890 in Lansingh v. Higgins, which went to the Supreme Court on appeal. Whether complainants are barred from the relief sought under the doctrine of *res adjudicata* arising from the litigation preceding this suit, under the 'claim that the right to call Lansingh to an account

under the so-called trust agreement had not accrued during the life of such proceedings, we think not of conclusive importance on the action of the chancellor in dismissing complainants' bill for want of equity. We are unable to discover that complainants' testator under the trust agreement had any title or claim to the stock acquired by Lansingh in payment for his services. There is nothing in that agreement, as touching the rights of Dempster, which gave him any interest in the stock of the other parties to that agreement. His interest was confined to his claim under scrip certificate 3 for fifty shares of the Cemetery Company stock. Whatever Lansingh acquired from the other parties is his and their concern, about which Dempster, in his lifetime, could not, nor can his executors now, be heard to complain. The averments of the bill, as amended, restrict the claim of Dempster to account for the stock so received by him from the other parties for duties undertaken by Lansingh under the terms of the agreement referred to, on the theory that Lansingh was trustee for Dempster and liable to account for all he received in his management of the trust. It is clear that this position is unsound. Dempster having procured all that he was in any manner entitled to receive, Lansingh stands discharged from any further liability to Dempster or his personal representative. As such condition appears from the averments of the bill as amended, it fails to show any right of recovery, making it obnoxious to the demurrers interposed which, if for no other reason, were rightfully sustained and the bill dismissed for want of equity.

Stress is laid upon the fact that a demurrer admits the averments of the bill. This is true in a limited way. A demurrer admits all facts well pleaded, but does not admit the truth of conclusions drawn, of which the facts alleged do not warrant a fair inference. Conclusions of law, whether correctly or incorrectly stated, are not admitted by a demurrer. It is for the court to state and lay down the law which it

shall adjudge to be applicable to the facts before it. Lawrence v. Traner, 136 Ill. 474; American L. & T. Co. v. M. & N. R. R. Co., 157 Ill. 641.

The decree of the Circuit Court being without error is affirmed.

*Affirmed.*